| | |
|---|---|
| DISTRICT COURT, LAKE COUNTY, STATE OF COLORADO<br><br>ADDRESS:         505 Harrison Avenue<br>                          Leadville, CO 80461 | DATE FILED<br>August 19, 2025 9:25 AM<br>FILING ID: 8874C8D8BDB40<br>CASE NUMBER: 2025CV30013 |
| Plaintiff: VALUED INC. d/b/a FLOYD'S OF LEADVILLE f/k/a FLOYD'S OF LEADVILLE, INC., a Colorado corporation; and ROBERT BELL, an individual<br><br>vs.<br><br>Defendants: FRANCIS A. SQUILLA a/k/a FRANK SQUILLA, an individual; and MARK LEONARD, an individual | ▲   COURT USE ONLY   ▲ |
| *Attorneys for Plaintiffs:*<br>Daniel J. Vedra, Atty. Reg. #43596<br>VEDRA LAW LLC<br>1444 Blake Street<br>Denver, CO 80202<br>Phone Number:      (303) 937-6540<br>Fax Number:          (303) 937-6547<br>Email:                     dan@vedralaw.com | Case No:<br><br>Division: |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiffs Valued Inc. d/b/a Floyd's of Leadville f/k/a Floyd's of Leadville, Inc., a Colorado corporation ("FoL"), and Robert Bell, an individual ("Bell"), submit their Complaint and Jury Demand against Defendants Frank Squilla, an individual, and Mark Leonard, an individual.

**I.     INTRODUCTION**

1.     This is an action for abuse of process, breach of contract, intentional interference with contractual relations, and declaratory judgment.

2.     Defendants Francis A. Squilla a/k/a Frank Squilla ("Squilla") and Mark Leonard ("Leonard") are longtime business partners and alleged shareholders in FoL. Leonard is currently a defendant in a lawsuit brought by FoL for his role in directly defrauding FoL of hundreds of

**EXHIBIT A**

thousands of dollars and causing millions of dollars in damages to FoL.  In the midst of this litigation, his longtime partner Squilla began inquiring after his "investment" in FoL—an investment that has lost all value due to Leonard's tortious conduct, among other reasons.  These seemingly innocuous inquiries were not innocent—shortly after they began FoL learned that Squilla was a participant in a scheme with Leonard to open a competing business.

3. To make the most out of his tense discussions with Bell, Squilla repeatedly reported Bell to New Jersey police authorities to attempt to have Bell arrested for witness tampering.  No reasonable prosecutor would bring these charges, but that did not stop Squilla.  The charges that Squilla was attempting to bring somehow made their way to Leonard's attorney, who transmitted them to the other attorneys opposing FoL in the Southern District of New York.  In concert with Leonard's attorney, those attorneys managed to obtain a gag order against Bell.  The purpose of getting this gag order was to drag Bell's good name through the mud and gain an advantage in the pending litigation.

4. These attorneys failed to do their due diligence, as the "charges" that they used to obtain a gag order had already been dismissed by the time they sought relief.  Indeed, those charges were expunged as though they never existed in the first place.  This all happened before Bell even knew that Squilla had complained then sent his complaints to Leonard and Leonard's counsel.  Nevertheless, neither Leonard nor any of the other defendants in the SDNY case have taken any steps to remediate the harm they have caused.

5. These actions are not the pursuit of justice.  They are the misuse of legal process to intimidate, retaliate, and gain advantage in civil litigation.

6. These actions are not only tortious, but also a breach of contract.  As an alleged shareholder in FoL, Squilla has violated his contractual obligations under the shareholder agreement that he agreed to by becoming a shareholder.  And Leonard caused him to breach that contract so that he could attempt to avoid liability in the SDNY.

## II. PARTIES, JURISDICTION, AND VENUE.

7. FoL is a Colorado corporation with its principal place of business in Lake County, Colorado.

8. Bell is a natural person and a resident of the City and County of Denver, Colorado.

9. Defendant Mark Leonard is a natural person who, on information and belief, resides in the State of California.

10. Defendant Frank Squilla is a natural person who, on information and belief, resides in the State of New Jersey.

11. This Court has subject matter jurisdiction over this action pursuant to Colo. Const. art. VI, § 9, and C.R.S. § 13-1-124.

12. This Court has personal jurisdiction over Defendants pursuant to C.R.S. § 13-1-124(1)(b), because Defendants committed tortious acts in Colorado and directed wrongful conduct at Colorado residents and entities, causing injury in this state.

13. This Court has personal jurisdiction over Defendants pursuant to C.R.S. § 13-1-124(1)(a), because Defendants transacted business in this state.

14. Pursuant to the terms of the contract to be interpreted and enforced herein, the Defendants consented to jurisdiction in the State of Colorado.

15. Defendant Squilla initiated contact with Plaintiff Bell in Colorado concerning his investment in FoL, a Colorado corporation, and actively solicited information from Bell in Colorado concerning FoL.

16. At all times, Defendant Squilla was aware that he was contacting Plaintiff Bell in Colorado.

17. At the time that Defendant Squilla engaged in the tortious conduct referred to herein, he knew that Plaintiff Bell was residing in Colorado.

18. Defendant Squilla intentionally participated in brining criminal charges in New Jersey for the purpose of forcing Plaintiff Bell, a Colorado resident, to incur attorney fees and travel costs to contest the criminal charges.

19. Defendant Leonard knew that the acts that Squilla was engaging in were to benefit Leonard.

20. Defendant Leonard knew that Plaintiff Bell was located in Denver, Colorado at the time of the tortious conduct complained of herein.

21. Venue is proper in Lake County, Colorado, pursuant to C.R.C.P. 98(c)(1), because Plaintiff FoL resides in Lake County and the injuries occurred, in whole or in part, in Lake County. Venue is proper under C.R.C.P. 98(c)(1) in that Defendants are both non-residents of this state and Lake is the county designated in the Complaint.

### III. GENERAL ALLEGATIONS – FOL

22. All shares of FoL are subject to the terms, conditions, and requirements of the FoL shareholders agreement dated June 1, 2016 (the "Agreement").

23. The Agreement provides that each person who acquires any legal or equitable interest in any shares shall be bound by the terms of the Agreement.

24. No issuance or transfer of FoL shares is effective and FoL shall not enter any issue or transfer upon the stock books of the Corporation or issue a certificate in the name of any person unless and until such person has agreed to and signed the Agreement.

25. FoL's confidential and proprietary information was shared with shareholders, including Leonard and Squilla, only because they were believed to be or should be bound to the terms of the Agreement.

26. Under the Agreement, each shareholder shall act with a duty of loyalty, in good faith and fair dealing with regard to all business matters. Further, each shareholder shall act generally in the best interests of the Corporation and to promote the business of the Corporation.

27. Squilla's actions described herein were: inconsistent with his duty of loyalty reflected in the Agreement, not taken in good faith, not fair dealing, and not in the best interests of FoL to promote FoL's business and FoL itself.

28. Squilla and Leonard also conspired to form or assist in the formation of a competing business using confidential and proprietary information belonging to FoL.

29. The confidential information used or disclosed by Squilla included sensitive and protected business materials obtained through his position as a shareholder.

30. Squilla's attempts to bring witness tampering charges against Bell were harmful to FoL, as Bell is a key owner of FoL and person responsible for the day-to-day operations of FoL.

31. Squilla's actions disrupted FoL's operations and posed a threat to its competitive standing and goodwill.

32. As a direct result of Squilla's breach, FoL experienced disruption of its business operations and incurred substantial internal costs and efforts to remediate the harm.

33. Leonard participated in Squilla's breach of the Agreement by working with Squilla to attempt to bring witness tampering charges against Bell.

34. By accusing Bell of witness tampering, and then participating in obtaining a gag order against Bell for this alleged witness tampering, Squilla and Leonard sought to interfere with Bell's role not only in the operation of FoL but also his role in the SDNY Litigation (defined below), where he is a witness.

35. The consequence of any violation of the Agreement is that the shareholder forfeits the shareholder's stock in FoL.

36. Squilla and Leonard have forfeited their stock in FoL.

IV. **GENERAL ALLEGATIONS BELL**

37. Bell is a witness and a FoL corporate representative in a civil lawsuit pending in the United States District Court for the Southern District of New York (the "SDNY Litigation").

38. Defendant Leonard is also a defendant in the SDNY Litigation.

39. Defendant Squilla is a friend, business associate, and/or agent of Leonard.

40. In the summer of 2024, Squilla began reaching out to FoL and Bell to inquire about his "investment" in FoL.

41. These purportedly innocuous inquiries followed years of silence from Squilla.

42. Squilla's phone calls to FoL and Bell commenced at approximately the same time that it was revealed that Squilla was a participant in a scheme to set up a competing business with Leonard.

43. On information and belief, Squilla was aware that this disclosure was imminent and feared of the repercussions of having been outed as a participant in a scheme to defraud FoL.

44. Squilla's phone calls to FoL and Bell commenced at approximately the same time that it was revealed that Squilla was a participant in a scheme to set up a competing business with Leonard. On information and belief, Squilla was aware that this disclosure was imminent and feared the repercussions of having been outed as a participant in a scheme to defraud FoL.

45. On or about August 15, 2024, Squilla contacted law enforcement in Washington Township, New Jersey, and made a criminal complaint against Bell.

46. Squilla falsely claimed that Bell had threatened to "find and kill" him.

47. The foregoing allegation was categorically false.

48. Squilla also claimed in a written police report that he had recorded the call with Bell in which the alleged threat occurred.

49. The foregoing allegation was also false; no such recording existed.

50. Despite being asked multiple times to produce the recording of the alleged crime, Squilla has not produced such a recording.

51. Either Squilla did not record the call, or he intentionally destroyed his recording.

52. Leonard intentionally destroys business records.

53. Leonard has testified under oath that he destroys business records.

54. Squilla's report of witness tampering resulting in criminal proceedings against Bell for witness tampering were ultimately determined to be unfounded.

55. Any and all charges or records related to the witness tampering complaint were later expunged.

56. Nevertheless, Squilla's allegations were passed to Leonard's attorney, Paul Rachmuth.

57. After the purported witness tampering charges were expunged, Rachmuth transmitted a letter to Plaintiff's counsel and to counsel for Alexander Capital, L.P., another defendant in the SDNY Litigation, claiming that Bell had threatened a witness.

58. The letter purposefully implied without outright stating that Bell had engaged in witness tampering.

59. On information and belief, Leonard's attorney Paul Rachmuth purposefully drafted his letter to implicate Bell in witness tampering without outright accusation so that he could maintain plausible deniability of falsely accusing Bell in witness tampering.

60. Rachmuth, either at the direction of Leonard or on his own initiative, exaggerated and embellished Squilla's already false accusations.

61. Rachmuth wrote that "Mr. Bell said that he was going to do the '[same thing that he was planning to do to Squilla] to Mark Leonard."

62. Rachmuth wrote: "I understand that Mr. Bell also communicated threats intended to be communicated to my client, Mark Leonard."

63. On information and belief, Rachmuth learned of Squilla's and Leonard's allegations through his client Mark Leonard.

64. Rachmuth disclosed these communications with the express approval of Leonard.

65. By disclosing the communications from his client with his client's approval, Rachmuth has intentionally waived any and all privilege concerning those communications.

66. Moreover, Rachmuth states in the letter that the phone conversation between Squilla and Bell occurred in FoL's counsel's office.

67. Rachmuth included this allegation for the sole purpose of attempting to lower FoL's counsel's esteem in the eyes of the court in the SDNY Litigation.

68. Rachmuth's allegation in the letter—that the conversation between Squilla and Bell occurred in FoL's counsel's office—was false.

69. As Rachmuth knew, having attended the deposition, FoL's counsel's internet connection was severed at the beginning of the deposition, which was being taken remotely.

70. Nevertheless, Rachmuth made this false allegation despite having seen a video of FoL's counsel taking the deposition outside of his home office.

71. Based on this letter, counsel for Alexander Capital sought and obtained a gag order against Bell in the SDNY Litigation.

72. At no time did Squilla or Leonard have a proper purpose for initiating these actions.

73. Squilla or Leonard did not intend to protect the integrity of any legal proceeding,

74. Squilla or Leonard intended to intimidate and silence Bell.

75. Later, Leonard escalated the allegations further by claiming that Bell had threatened Leonard's entire family.

76. These statements were false, and no evidence supported them.

77. The criminal complaint was made with the ulterior motive of intimidating a witness and gaining advantage in pending civil litigation.

78. The criminal complaint was made with the ulterior motive of causing Bell to incur attorney fees and lost time.

79. The criminal complaint was made with the ulterior motive of causing Bell stress like the stress that Leonard was experiencing as a defendant in the SDNY Litigation.

80. The criminal complaint was made with the ulterior motive to benefit Leonard.

81. The criminal complaint was not made with the intent of bringing a wrongdoer to justice.

82. As a direct result of Defendants' conduct, Bell suffered significant harm, including legal expenses, reputational damage, emotional distress, and interference with his ability to participate freely in the SDNY Litigation.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract – FOL Against Squilla)

83. Plaintiff FoL incorporates by reference all preceding paragraphs as though fully set forth herein.

84. All shares in FoL are subject to the Agreement.

85. Defendant Squilla is bound by the Agreement.

86. Squilla breached the agreement by interfering with company management, conspiring to form a competing business, and misusing confidential information.

87. As a result, FoL experienced operational disruption and harm to its business interests.

88. FoL is entitled to a declaratory judgment that Squilla's rights under the Agreement are forfeited and that any shares claimed by him are void and of no legal effect.

89. FoL also seeks attorneys' fees and other appropriate relief.

## SECOND CLAIM FOR RELIEF
### (Intentional Interference with Contract – FOL against Leonard)

90. Plaintiff Valued Inc. d/b/a Floyd's of Leadville f/k/a Floyd's of Leadville, Inc. ("FoL") incorporates by reference all preceding paragraphs as though fully set forth herein.

91. At all relevant times, a valid and enforceable Agreement existed between FoL and all of its shareholders.

92. The Agreement imposed contractual obligations on Squilla, including duties not to interfere with FoL's management and operations and not to misuse or disclose FoL's confidential information.

93. Defendant Mark Leonard knew or had reason to know of the existence and substance of the Agreement, including Squilla's contractual obligations.

94. Leonard intentionally and improperly induced Squilla to breach the Agreement by encouraging or assisting him to:

    a. Interfere with the internal management and operations of FoL;

    b. Use FoL's confidential and proprietary information to start or support a competing business; and

    c. Act adversely to FoL's interests in coordination with Leonard's personal and litigation-related objectives.

95. Leonard's inducement of these breaches was done willfully and maliciously, and without justification.

96. Leonard further induced and encouraged Squilla to engage in retaliatory conduct against Plaintiff Robert Bell, which was part of the same course of interference intended to harm FoL's operations and advance Leonard's personal interests.

97. As a direct and proximate result of Leonard's interference, FoL has suffered and continues to suffer damages, including disruption of its operations, the misappropriation of confidential information, and erosion of its competitive position and goodwill.

98. FoL is entitled to recover compensatory damages in an amount to be determined at trial, along with such other relief as the Court deems just and proper.

### THIRD CLAIM FOR RELIEF
### (Declaratory Judgment – FOL Against Leonard and Squilla)

99. Plaintiff FoL incorporates by reference all preceding paragraphs as though fully set forth herein.

100. Leonard and Squilla have acted contrary to their obligations under the Agreement and have forfeited their ownership of shares in FoL.

101. Leonard and Squilla may or do contend that their alleged shares in FoL are not subject to the Agreement.

Case No. 1:25-cv-03399-SKC-SBP    Document 1-1    filed 10/27/25    USDC Colorado
pg 11 of 13

102. To the extent that Leonard and Squilla contend that they are not subject to the Agreement, they never received shares and were never the owners of shares.

103. There is uncertainty and controversy over Leonard and Squilla's rights and obligations under the Agreement and their continued ownership of shares in FoL.

104. A declaration of FoL's and the defendants' rights will terminate the uncertainty and controversy.

105. FoL is entitled to a declaration that defendants are not shareholders and have forfeited their shares.

## FOURTH CLAIM FOR RELIEF
### (Abuse of Process – Bell against Leonard and Squilla)

106. Plaintiff Robert Bell incorporates by reference all preceding paragraphs as though fully set forth herein.

107. Defendants knowingly and intentionally used legal process, including filing a false criminal complaint and disseminating false allegations to third parties, for purposes unrelated to the proper function of such process.

108. These actions were intended to intimidate, discredit, and retaliate against Bell and gain tactical advantage in unrelated civil litigation.

109. Defendants acted with malice, in bad faith, and without probable cause.

110. As a direct result, Bell suffered reputational harm, emotional distress, legal expenses, and interference with his legal rights.

111. Bell is entitled to damages and further relief as the Court deems just and proper.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants, and award the following relief:

A. Compensatory damages in an amount to be determined at trial;

B. Attorneys' fees and costs, as permitted by law or agreement;

C. Prejudgment and post judgment interest at the maximum rate allowed by law;

D. Leave to amend to assert punitive damages against Defendants Leonard and Squilla for willful and wanton conduct;

E. Such other and further relief as the Court deems just and proper;

F. Declaratory judgment that any shares in Valued Inc. d/b/a Floyd's of Leadville f/k/a Floyd's of Leadville, Inc. purportedly held or claimed by Defendant Frank Squilla are void and of no legal effect due to his material breaches of the Agreement.

**PLAINTIFFS ARE ENTITLED TO AND HEREBY DEMAND TRIAL BY JURY**

Dated: August 19, 2025

**VEDRA LAW LLC**

By: /s/ Daniel J. Vedra
  Daniel J. Vedra
  *Attorneys for Plaintiffs*